UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANFORD S. WADLER,<br><br>    Plaintiff,<br><br>    v.<br><br>BIO-RAD LABORATORIES, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-02356-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE REBUTTAL REPORT OF BRADLEY WENDEL**<br><br>Re: Dkt. No. 82 |

## I. INTRODUCTION

Plaintiff Sanford Wadler brings a whistleblower action against his former employer, Defendant Bio-Rad Laboratories, Inc. ("Bio-Rad"), contending he was wrongfully terminated in retaliation for investigating and reporting to Bio-Rad's upper-level management possible violations of the Foreign Corrupt Practices Act ("FCPA") in China. Wadler asserts claims under the Sarbanes-Oxley Act, the Dodd-Frank Act, and California state law. The case is scheduled to go to trial in January 2017 and the parties exchanged their expert witness disclosures on July 1, 2016, pursuant to the schedule set by the Court. On August 17, 2016, Plaintiff disclosed his rebuttal expert opinions, which included an expert report by Mr. W. Bradley Wendel, a law professor. Bio-Rad now brings a Motion to Strike Rebuttal Report of Bradley Wendel ("Motion"), asserting that Mr. Wendel's opinions are not properly characterized as rebuttal and instead, are new opinions that should have been disclosed on July 1, 2016. Bio-Rad asks the Court to preclude Mr. Wendel from testifying at trial, pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, or in the alternative, to allow Bio-Rad to submit a rebuttal to Mr. Wendel's "affirmative opinions." A hearing on the Motion was held on Friday, October 14, 2016 at 9:30 a.m. For the reasons

stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II. BACKGROUND

### A. The Expert Reports of Dr. Emre Carr and Mr. Wendel

The question before the Court is whether the opinions of Plaintiff's expert, Mr. Wendel, are properly characterized as rebuttal or if, instead, they are new opinions that should have been disclosed by July 1, 2016, in time for Bio-Rad to introduce its own rebuttal expert to respond to Mr. Wendel's opinions. Because Plaintiff offered the opinions of Mr. Wendel to rebut the opinions of Bio-Rad's expert, Dr. Emre Carr, the Court briefly summarizes the relevant opinions of both experts below.

#### 1. Expert Report of E. Emre Carr

Dr. Carr's experience and training is in the area of financial reporting for public companies. Declaration of Linda M. Inscoe in Support of Defendants' Motion to Strike Rebuttal Expert Report of Bradley Wendel ("Inscoe Decl."), Ex. A (Expert Report of Emre Carr, Ph.D., CFA) ("Carr Report"), at 3-5. He is currently a director in the Capital Markets Group at Berkeley Research Group and has been engaged as a consultant on subjects that include "financial reporting, public company disclosures, executive compensation, U.S. GAAP, SEC filing requirements, SEC securities issuance regulations, corporate internal controls, registered and unregistered securities issuances, securities and commodities trading, due diligence related to securities offerings, and fiduciary responsibilities of executives and directors." Carr Report ¶ 11. Previously, Dr. Carr was a Senior Financial Economist at the Division of Risk, Strategy, and Financial Innovation at the SEC. *Id.* ¶ 12.

In his report, Dr. Carr offered opinions relating to two subjects that are relevant to the dispute at hand. First, he opined that Mr. Wadler "overstepped his role as general counsel" when he refused to sign off on a legal representation letter that was required in connection with Bio-Rad's SEC Form 10-K filing based on his belief that the accrual amount stated in the letter needed to be increased. *Id.* at 11-15. According to Dr. Carr, U.S. GAAP requires the "disclosure or

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

2

accrual of loss contingencies – circumstances involving uncertainty that will ultimately be resolved when a future event occurs," such as potential litigation or assessments against the company. *Id*. at 9-10. He opines, however, that "the estimation of the accruals under U.S. GAAP is a task for the accountants, not the General Counsel." *Id*. at 10. General counsel's role is only to provide "input . . . as to . . . the probability and amount of loss for legal contingencies," Dr. Carr opines. *Id*. Therefore, he concludes, "Mr. Wadler's responsibility was solely to provide the facts and circumstances related to litigation, claims, and assessments against Bio-Rad," and "[h]is insistence that the accrual be increased demonstrated . . . a failure to observe the proper role of a General Counsel in providing inputs for the accrual as opposed to dictating the accrual amount itself." *Id*. at 11, 14-15. Dr. Carr also challenged on the merits Mr. Wadler's assertion that the accrual amount in the representation letter needed to be increased, opining that Mr. Wadler's position reflected a lack of understanding of U.S. GAAP. *Id*. at 14.

Dr. Carr also expressed opinions relating to Mr. Wadler's "severe allegations" to Bio-Rad's Audit Committee on February 8, 2013. *Id*. at 15-18. According to Dr. Carr, Mr. Wadler's report that "he had become aware of serious and prolonged violations of the FCPA in Bio-Rad's business in China" that needed to be disclosed to government agencies and auditors was based on evidence that was "far from sufficient to draw Mr. Wadler's conclusions," even if his concerns were "worth looking into further." *Id*. at 15. In particular, he opined that "the set of sales documents that Mr. Wadler presented did not contain discrepancies that supported Mr. Wadler's conclusions." *Id*. at 16. Among other things, Dr. Carr concluded that it was "not apparent from the documents" that free products were being used as bribes in China, as Mr. Wadler suspected. *Id*.

### 2. Expert Report of W. Bradley Wendel

Mr. Wendel is a law professor whose area of expertise is legal ethics. Inscoe Decl., Ex. D (Expert Declaration of W. Bradley Wendel) ("Wendel Report") at 1-2. Mr. Wendel addresses in his report obligations of counsel under the Model Rules of Professional Conduct, relevant state law rules of professional ethics, and the regulations promulgated under the Sarbanes-Oxley Act governing the duties of lawyers who represent public-traded companies. *Id*. at 5-6. Mr. Wendel

3

opines that based on these standards and the evidence that Mr. Wadler had about potential FCPA violations in China, Mr. Wadler had an obligation to report his concerns to the Audit Committee because an attorney has an ethical obligation not to "ignore the obvious." *Id*. at 7-12. He further challenges the opinion of Dr. Carr that a company's general counsel is "merely a source of inputs into the accounting and financial reporting process." *Id*. at 12. Mr. Wendel states that while "one role of the General Counsel, with respect to the auditing and financial reporting process[ ] is to provide inputs to accountants" "that role does not – and cannot – diminish the most important role of a lawyer retained or employed by an organization, which is to ensure the organization's compliance with all applicable legal standards and requirements." *Id*. at 12-13. Therefore, Mr. Wendel concludes, Dr. Carr improperly faulted Mr. Wadler in his report for refusing to sign a legal representation letter that reflected an accrual amount that he believed was incorrect. *Id*. at 13-14. Rather, Mr. Wendel states, it would have been unethical for Mr. Wadler to sign such a representation letter. *Id*. at 14.

### B. The Contentions of the Parties

In the Motion, Bio-Rad argues that Mr. Wendel's report does not rebut Dr. Carr's opinions but instead, offers new opinions that should have been disclosed on July 1, 2016, the deadline for expert disclosures. Motion at 4. According to Bio-Rad, Dr. Carr's opinions are "based on the laws and standards of conduct applicable to public companies engaged in financial reporting" and are aimed at showing that Mr. Wadler "did not have support for his allegations that Bio-Rad violated the FCPA." *Id*. at 5. Mr. Wendel, however, has no expertise in financial reporting or the "standards of conduct applicable to executives responsible for internal controls over financial reporting," Bio-Rad asserts. *Id*. Nor does Mr. Wendel rely on GAAP or the securities laws that are the basis for Dr. Carr's opinions. *Id*. And, Bio-Rad contends, Mr. Wendel does not "directly respond to a single one of Dr. Carr's opinions." *Id*. It is "telling," Bio-Rad asserts, that Plaintiff has submitted a rebuttal report by another expert, Dr. Donald Walker, with expertise in financial reporting and accounting, to respond to Dr. Carr's substantive challenges to the concerns expressed by Mr. Wadler to the Audit Committee and his reasons for initially refusing to sign the representation letter. *Id*.

4

Plaintiff responds that Mr. Wendel's opinions are properly characterized as rebuttal because he responds to two opinions of Dr. Carr. Opposition at 1. First, Plaintiff contends, Mr. Wendel responds directly to Dr. Carr's opinion that Mr. Wadler overstepped his role as General Counsel when he refused to sign the representation letter based on his disagreement with the accrual amount. *Id*. at 2-3. In particular, Plaintiff asserts that "Professor Wendel rebutted Dr. Carr's statement that Mr. Wadler had somehow acted outside of the scope of his role by refusing to merely be a rubber stamp for finance when it came to signing off on a legal representation letter for Bio-Rad's 10-K filing that stated that the accrual should remain unchanged." *Id*. at 4. Second, Plaintiff contends Mr. Wendel responds to Dr. Carr's opinion that Mr. Wadler "acted inappropriately by blowing the whistle in the first place." *Id*. at 3. Specifically, he asserts, Mr. Wendel rebuts Dr. Carr's opinion that the documents attached to Mr. Wadler's memo to the Audit Committee provided sufficient support to trigger Mr. Wadler's ethical obligations as General Counsel based on his legal duty not to ignore the obvious. *Id*. at 8.

Plaintiff rejects Bio-Rad's contention that Mr. Wendel is not a proper rebuttal expert because he does not have the same qualifications or use the same methodology as Dr. Carr, arguing that this is irrelevant to whether a report constitutes proper rebuttal. *Id*. at 6 (citing *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 630, 637 (D. Haw. 2008); *Fed. Trade Comm'n v. Amazon.com, Inc.*, No. C14-1038-JCC, 2016 WL 4154284, at *2 (W.D. Wash. Feb. 9, 2016); *Lott v. ITW Food Equip. Grp. LLC*, No. 10 CV 1686, 2013 WL 3728581, at *23 (N.D. Ill. July 15, 2013)). To the contrary, Plaintiff asserts, "the fact that Dr. Carr failed to consider [an] attorneys' mandatory ethical duties when opining on the proper role of a general counsel only serves to show how methodologically flawed his analysis is, which is 'precisely the type of rebuttal testimony' Rule 26 contemplates." *Id*. at 6-7 (quoting *Laflamme v. Safeway, Inc.*, No. 3:09-CV-00514, 2010 WL 3522378, at *3 (D. Nev. Sept. 2, 2010)). Plaintiff also notes that he intends to bring a motion in limine to preclude Dr. Carr from offering testimony on the question of whether Mr. Wadler's concerns about Bio-Rad's possible violation of the FCPA were justified, asserting that this sort of opinion usurps the role of the jury. *Id*. at 9.

## III. ANALYSIS

### A. Legal Standards

"A party must make [expert] disclosures at the time[ ] and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D)(i). Parties may introduce an expert opinion after the deadline for expert disclosures only if it "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii). "'Rule 37(c)(1) provides that a party failing to provide information required by Rule 26(a) or (e) "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."'" *Fed. Trade Comm'n v. Amazon.com, Inc.*, No. C14-1038-JCC, 2016 WL 4154284, at *2 (W.D. Wash. Feb. 9, 2016) (quoting *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (quoting Fed. R. Civ. Proc. 37(c)(1))). "Rule 37(c)(1) is a self-executing, automatic sanction designed to provide a strong inducement for disclosure." *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (internal quotations omitted).

### B. Discussion

"Rebuttal testimony cannot be used to advance new arguments or new evidence." *Columbia Grain, Inc. v. Hinrichs Trading, LLC*, No. 3:14-CV-115-BLW, 2015 WL 6675538, at *2 (D. Idaho Oct. 30, 2015) (citing *Century Indem. Co. v. Marine Group, LLC*, 2015 WL 5521986 at *3 (D.Or. Sept. 26, 2015). The test of whether an expert's opinion constitutes rebuttal or a "new" opinion, however, is not "whether a rebuttal expert employs new testing or methodologies" but instead, whether "a rebuttal attempts to put forward new theories outside the scope of the report it claims to rebut." *Fed. Trade Comm'n v. Amazon.com, Inc.*, No. C14-1038-JCC, 2016 WL 4154284, at *2 (W.D. Wash. Feb. 9, 2016). The Court concludes that Mr. Wendel's opinions relating to Mr. Wadler's ethical duties as Bio-Rad's general counsel in connection with the representation letter directly address opinions expressed by Dr. Carr and therefore relate to the same subject matter for the purposes of Rule 26(a)(2)(D)(ii). On the other hand, Mr. Wendel's opinions relating to Mr. Wadler's ethical duties in connection with his interactions with the Audit Committee go beyond the scope of Dr. Carr's opinions and therefore are not proper rebuttal.

First, Dr. Carr expresses opinions relating to Mr. Wadler's role in connection with the representation letter that he initially refused to sign. Dr. Carr opines that once Mr. Wadler provided the "inputs" for determining the accrual amount his job was done and it was improper for him to refuse to sign the representation letter based on his belief that the accrual amount stated in it was too low. Mr. Wendel directly addresses this opinion, opining that Dr. Carr's opinion is inconsistent with the ethical obligations that apply to an attorney who signs a representation letter on behalf of a public company. It is of no moment that Mr. Wendel is a law professor who is looking to the rules of legal ethics whereas Dr. Carr is relying on his expertise in the field of reporting requirements for public companies and corporate internal controls. The subject matter is the same, namely, whether it was proper for Mr. Wadler, as Bio-Rad's general counsel, to refuse to sign a representation letter with an accrual amount that he believed was incorrect. Therefore, the Court declines to strike the opinions of Mr. Wendel on that subject.

Second, Dr. Carr expresses the opinion that the evidence Mr. Wadler attached to his letter to Bio-Rad's Audit Committee "was not sufficient to draw Mr. Wadler's conclusions." He did not, however, opine in his report that Mr. Wadler should not have brought his concerns to the attention of the Audit Committee because he did not have enough evidence to support his concerns. Nor will Dr. Carr be permitted to offer any such opinions at trial as he did not include them in his report.[2] Therefore, Mr. Wendel's opinions relating to the ethical duty of general counsel not to "ignore the obvious" and Mr. Wadler's ethical obligations to report to the Audit Committee fall outside the scope of Dr. Carr's original opinions and are stricken.

Finally, Bio-Rad's request that it be permitted to submit a "sur-rebuttal" in response to Mr. Wendel's report is denied.

---

[2] Of course, were Dr. Carr to opine at trial that Mr. Wadler did not have sufficient evidence to warrant bringing his concerns to the attention of the Audit Committee (or were Bio-Rad's counsel to rely on Dr. Carr's testimony to make such an argument), the Court would permit Plaintiff to introduce the opinions of Mr. Wendel on this subject so long as they were included in his report.

7

## IV. CONCLUSION

The Motion is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

Dated: October 17, 2016

_____
JOSEPH C. SPERO
Chief Magistrate Judge