UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANFORD S. WADLER,<br><br>    Plaintiff,<br><br>  v.<br><br>BIO-RAD LABORATORIES, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-02356-JCS<br><br>**ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(B) AND MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59**<br><br>Re: Dkt. No. 240 |

## I.  INTRODUCTION

On February 7, 2017, a jury verdict was entered in favor of Plaintiff Sanford Wadler in this whistleblower action against his former employer, Bio-Rad Laboratories, Inc. ("Bio-Rad") and its CEO, Norman Schwartz, after the Court denied Defendants' motion for judgment as a matter law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. *See* Dkt. No. 215. The jury found that Defendants were liable on all three of Wadler's claims, namely, violation of the Sarbanes-Oxley Act, violation of the Dodd-Frank Act, and wrongful termination in violation of public policy under California law (the "*Tameny* Claim"), and awarded $2,960,000 in past economic loss damages and $5,000,000 in punitive damages. The jury awarded no damages for future economic loss or emotional distress. Presently before the Court is Defendants' Renewed Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b) and Motion for New Trial Pursuant to Fed. R. Civ. P. 59 ("Motion"). The Court finds that the Motion is suitable for determination without oral argument pursuant to Civil Local Rule 7-1(b) and therefore vacates the hearing set for

May 19, 2017. For the reasons stated below, the Motion is DENIED.[1]

## II. BACKGROUND

Throughout trial, the parties presented starkly different theories of the relevant events. Defendants' theory of the case is succinctly summarized in the Motion:

> Bio-Rad terminated Mr. Wadler on June 7, 2013, immediately after serious deficiencies in his legal judgment had been confirmed and after months of obstructive, irrational, and belligerent behavior that no public company should be forced to tolerate from its General Counsel. His behavior led to calls for his termination by the head of Human Resources, the Board of Directors, and the CFO. . . . The Board and the CFO both reached the point of "him or me," i.e., if Mr. Wadler stayed on, they would resign because of his risky and intolerable behavior. . . . Despite his combative stance during cross-examination, Mr. Wadler admitted that a General Counsel needs to show good judgment and work effectively with senior management. By June 7, 2013, Mr. Wadler had long-since ceased doing either of those things. His claim to be a whistleblower—which was not based on even the slightest investigation—was discredited by everyone who reviewed it in real time.

Motion at 2-3.

Plaintiff, on the other hand, asserts Bio-Rad's position is nothing more than "the traditional whistleblower defense, maligning Mr. Wadler, exaggerating a handful of small workplace issues, and arguing that it would have fired him anyway" and contends the jury "correctly disregarded these inconsistent, after-the-fact, and undocumented pretexts." Opposition at 2. According to Plaintiff:

> The evidence clearly showed that Mr. Wadler engaged in protected activity. There was no meaningful evidence at trial challenging his subjective belief in the complaint he made. Moreover, the contemporaneous reaction to the disclosure shows that it was objectively reasonable. Bio-Rad's audit committee, its officers, and its outside counsel all believed that Mr. Wadler's concerns required serious investigation, and they spent substantial time and money investigating them (however unthoroughly as the evidence showed).

*Id.* at 1. Plaintiff further asserts that the "clear evidence" showed that "[w]hen Mr. Schwartz learned of Mr. Wadler's complaint, his first impulse was to put him on leave. Mr. Wadler was labeled a 'whistleblower threat,' 'loose cannon,' and 'paranoid,' and a secret plan was hatched to

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

2

fire him." *Id*. at 1-2.

According to Plaintiff, "Mr. Schwartz repeatedly contradicted his prior sworn testimony and, more disturbingly, was forced to admit that a key piece of defense evidence was a forgery, created and backdated after Mr. Wadler's termination." *Id*. at 2. "This forgery was aided by Ms. Corey both in this trial and before the Department of Labor." *Id*. Thus, Plaintiff contends, "it is little wonder that the jury disbelieved Bio-Rad's implausible claim that, suddenly after 25 years, Mr. Wadler became a monstrous and abusive coworker, too toxic to endure, yet paradoxically no one counseled him or made any effort to determine what was wrong, and Bio-Rad allowed him to keep working without any attempt to warn or improve for months until he was fired without warning in June without any final triggering event." *Id*. at 2.

## III. ANALYSIS

### A. Legal Standard

#### 1. Rule 50(b)

Rule 50 governs motions for judgment as a matter of law in cases involving jury trials. Rule 50(a)(1) provides as follows:

> 1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). The motion must be made before the case is submitted to the jury and must "specify . . . the law and facts that entitle the movant to the judgment." Fed.R.Civ.P. 50(a)(2). If the court denies the Rule 50(a) motion, "the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed.R.Civ.P. 50(b).

"A jury's verdict must be upheld if it is supported by substantial evidence." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). "Substantial evidence is such relevant

evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir.1994); *see also Wallace*, 479 F.3d at 624 ("Judgment as a matter of law may be granted only where . . . the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."). In ruling on a motion for judgment as a matter of law, "the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." *Wallace*, 479 F.3d at 624. In addition, the court views the evidence in the light most favorable to the nonmoving party, and all reasonable inferences are drawn in favor of that party. *Id.*

**2. Rule 59**

Under Federal Rule of Civil Procedure 59(a)(1), a court "may, on motion, grant a new trial on all or some of the issues." Fed. R. Civ. P. 59(a)(1). A court may grant a new trial "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc*., 481 F.3d 724, 729 (9th Cir. 2007). "A judge should grant a new trial only if she 'is left with the definite and firm conviction that a mistake has been committed.'" *Finjan, Inc. v. Blue Coat Sys., Inc*., No. 13-CV-03999-BLF, 2016 WL 3880774, at *3 (N.D. Cal. July 18, 2016) (quoting *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (internal citations omitted)). The court is not required to view the trial evidence in the light most favorable to the verdict when it considers a Rule 59(a) motion. *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014). Instead, "the district court can weigh the evidence and assess the credibility of the witnesses." *Id.* "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." *Id*. (citing *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)).

**B. Discussion**

Defendants contend they are entitled to judgment as a matter of law in their favor on all three of Plaintiff's claims and as to his request for punitive damages. In the alternative, they seek a new trial on the basis that the jury's verdict was against the weight of the evidence and/or

4

constitutes a miscarriage of justice. In the Motion, Defendants challenge the jury's verdict on the following grounds:

1) Based on the evidence presented at trial, no reasonable jury could conclude – and the weight of the evidence did not support the conclusion – that Wadler engaged in protected activity, that is, that he held a subjectively *and* objectively reasonable belief that the conduct he was disclosing constituted a violation of the Foreign Corrupt Practices Act ("FCPA");

2) Based on the evidence presented at trial, no reasonable jury could conclude – and the weight of the evidence did not support the conclusion – that Wadler's February 8, 2013 memo to the Audit Committee was a substantial or contributing factor in his termination;

3) Defendants are entitled to judgment in their favor, or at least a new trial, because they presented "overwhelming and unrebutted evidence" that they had legitimate reasons to terminate Wadler;

4) Defendants are entitled to judgment in their favor with respect to punitive damages because none of Wadler's claims allows for an award of punitive damages;

5) Defendants are entitled to judgment in their favor on the Sarbanes-Oxley claim because reporting purported FCPA claims is not protected activity under Sarbanes-Oxley; and

6) Defendants are entitled to judgment in their favor on the Dodd-Frank claim because Wadler did not report the purported violations to the Securities and Exchange Commission.

**1. Evidence that Wadler Had a Subjectively and Objectively Reasonable Belief that Bio-Rad Had Violated the FCPA**

At trial, the Court instructed the jury that in order to prevail on all three of his claims, Wadler was required to establish by the preponderance of the evidence that he engaged in protected activity under Sarbanes-Oxley Act, that is, that he made a disclosure regarding conduct

that he reasonably believed constituted a violation of any rule or regulation of the Securities and Exchange Commission. *See* Dkt. No. 203 (Final Jury Instructions), Nos. 18-19, 24-25, 27. The Court further instructed the jury that to meet the "reasonable belief" requirement, Wadler was required to establish both that he "personally and in good faith" "believed that the conduct he was disclosing constituted a violation of any rule or regulation of the Securities and Exchange Commission; and . . . [t]hat his belief was objectively reasonable under the circumstances." *Id*., No. 20. Defendants do not challenge the Court's instructions with respect to the reasonable belief requirement but argue that the evidence shows that Wadler did not actually believe the allegations in his February 8, 2013 memo to the Audit Committee ("Memo") and in any event, that his belief was not reasonable in light of the evidence.

Defendants attempted to establish at trial that Wadler did not actually believe that the allegations in his Memo, relating to possible FCPA violations in China, were true. They point to Wadler's own testimony, asserting that while the Memo stated unequivocally that Bio-Rad had engaged in FCPA violations, he backed away from that position at trial, testifying only that his memo was a *request* for an investigation. *See* Kramer Decl., Exs. 6, 8 & 9. They also point out that Wadler testified that he received the document he attached to the Memo, which purportedly illustrated the possible violations, three months before he alerted the Audit Committee of his concerns. *See id*., Ex. 10. According to Defendants, Wadler learned during this three month period that there would be a "tone-at-the top" meeting with federal prosecutors and feared that he would face "tough questions questions" about his responsibility for past FCPA violations in Thailand and Russia. *See id.*, Ex. 11. Defendants also point to Wadler's testimony that those who report wrongdoing typically are not held liable for that conduct, *id*., Ex. 13, and that he searched for employment lawyers in December 2012 and January 2013. *Id*., Ex. 12.

Further evidence of Wadler's bad faith, Defendants contend, included Wadler's failure conduct his own investigation of possible FCPA violations in China, his refusal to credit the explanation of Christine Tsingos for the apparent discrepancies in some invoices based on a "three-piece suit analogy," and the lack of credible evidence that Wadler discussed his concerns with Schwartz or other top management. *See* Ex. 14-16.

6

According to Defendants, the evidence presented at trial also supported the conclusion that even if Wadler had a subjective belief that the allegations in the Memo were true, that belief would not have been reasonable. Defendants point to numerous witnesses who offered testimony that Wadler's concerns were baseless and his Memo reflected a lack of understanding of how invoicing was conducted at Bio-Rad, or of business practices in China. *See, e.g.,id.*, Exs. 18 -20.

The Court concludes that the jury's finding was supported by substantial evidence under Rule 50(b) and that the verdict was not against the weight of the evidence under Rule 59. Plaintiffs presented substantial evidence at trial showing that Wadler subjectively believed that Bio-Rad was engaging in conduct in China that violated the FCPA and that his belief was reasonable. Without reciting all of that evidence here, the Court notes that Wadler himself testified extensively as to the reasons for his belief that FCPA violations were likely occurring and his difficulty obtaining documentation showing Bio-Rad transactions in China. *See* Trial Transcript ("TT") 226-301. He also testified that John Cassingham, the outside counsel who was working for Bio-Rad in connection with the Life Tech Audit, discussed his concerns with Wadler that bribery might be occurring in China or that there might be an "under-the-covers" scheme there. *See id*. Wadler further testified that he attempted to discuss his concerns about FCPA violations in China with Schwartz and that Schwartz's response indicated to Wadler that Schwartz was aware of the issue and did not plan to do anything. TT at 268.

Plaintiff presented other evidence supporting the jury's finding as to his subjective and objective belief. Plaintiff cites the testimony of Drapeau that Wadler believed FCPA violations had occurred, and documents showing that upper-level management agreed that the lack of documentation reflecting transactions in China was a source of concern. Plaintiff also points to a December 10, 2012 presentation by Chinese manager George Cao addressing major problems with a distributor in Northern China, Yuan Ye, who had produced no contracts in response to Bio-Rad's request for documentation, and evidence that the Bio-Rad legal department learned in January 2013 of 18 unauthorized contracts in China. TT at 284-285,1495 & Trial Exhibits 8, 69, 89-91, 100 and 242. As to the "three-piece suit" explanation offered by Christine Tsingos, Plaintiff offered contrary evidence reflecting transactions in China that involved free products and

7

therefore did not fit the analogy. *See* TT at 277-278, 288, 559, 907, 2011 & Trial Exs. 48-49, 133.

The jury's finding was supported by substantial evidence under Rule 50(b) and the verdict was not against the weight of the evidence under Rule 59.

### 2. Evidence that Wadler's Audit Committee Memo Was a Substantial or Contributing Factor in his Termination

The Court instructed the jury that to prevail on his claims, Wadler was required to demonstrate by a preponderance of the evidence that the protected activity (the Memo) was a "substantial motivating factor," "contributing factor" or "substantial motivating reason" for his discharge. In support of their request for judgment as a matter of law or a new trial, Defendants contend the evidence does not support the jury's finding that this requirement was met. *See* Dkt. No. 203 (Final Jury Instructions), Instructions 18, 22, 24, 27. Defendants cite to Schwartz's testimony that Wadler was terminated for a pattern of behavior involving a series of incidents with coworkers, and that the Davis Polk report was the "last piece of the puzzle" that established that Wadler was incompetent. *See* TT at 892; Kramer Decl., Ex. 35 (including transcript of video deposition clip played at trial but not recorded).

Plaintiff, on the other hand, points to, *inter alia*, a positive review in December 2012, an email from Schwartz sent just two days after Schwartz learned about of the Memo suggesting Wadler be placed on administrative leave, and notes of a conversation with Drapeau in March 2013 indicating that Schwartz saw Wadler as a "loose cannon," and a "whistle-blower threat" and had decided that he would terminate Wadler once the Davis Polk investigation had concluded. *See* TT at 211-223, 593-595, & Trial Exs. 27, 40, 71, 86. He also offered evidence that a negative performance review for 2012 dated April 15, 2013 and provided to the Justice Department, was not created until after Wadler had been terminated, several months later, and that Schwartz himself testified at his deposition that Wadler's Memo was "somewhat" related to his termination. *See* TT at 629-632 &Trial Ex. 87. Again, the jury found Plaintiff's version of events more credible than Defendants', concluding that Wadler had demonstrated causation as to his claims.

The Court concludes that the jury's finding was supported by substantial evidence under

8

Rule 50(b) and that the verdict was not against the weight of the evidence under Rule 59.

### 3. Evidence that Defendants had Legitimate Reasons for Terminating Wadler

The Court instructed the jury that Defendants were not liable if they proved "by clear and convincing evidence that they would have terminated Mr. Wadler at the same time based on wholly legitimate reasons even if Plaintiff had not engaged in the protected activity." Dkt. No. 203 (Final Jury Instructions), Instructions 23, 26. Defendants characterize the evidence they presented at trial on this defense as "overwhelming and unrebutted," citing testimony by coworkers and outside counsel that Wadler had "screamed" at them, acted aggressively, or stopped speaking to them. Plaintiff, on the other hand, pointed to, *inter alia*, inconsistencies in the testimony of Defendants' witnesses – particularly Schwartz and Corey – and to evidence that Schwartz (with Corey's knowledge) may have created a false review to bolster Bio-Rad's explanation for Wadler's termination. The Court finds that there was substantial evidence to support the jury's conclusion and the verdict is not against the weight of the evidence.

### 4. Availability of Punitive Damages

Defendants contend Plaintiff is not eligible for an award of punitive damages because neither the Sarbanes-Oxley Act nor the Dodd-Frank Act provide for punitive damages and a *Tameny* claim cannot expand the scope of the remedy beyond that which is available on the underlying statute that is the basis for the claim. Motion at 20-21 (citing *Dutra v. Mercy Med. Ctr. Mt. Shasta*, 209 Cal. App. 4th 750, 756 (2012) (emphasis in original) (quoting *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1159 (1998)). Defendants' position has been rejected by the Ninth Circuit, however, which has held that "[t]he California Supreme Court has made it clear that damages for wrongful discharge in violation of public policy are not limited to those specified in the underlying statute that was violated." *Freund v. Nycomed Amersham*, 347 F.3d 752, 759 (9th Cir. 2003) (citing *Rojo v. Kliger*, 52 Cal.3d 65, 80-81 (1990)). In *Freund*, the court rejected a similar argument based on *City of Moorpark*, finding that in *Moorpark* the California Supreme Court did not intend to limit or reverse the established law permitting a plaintiff to recover damages on a claim for wrongful discharge in violation of public policy beyond those specified in the underlying statute. 347 F.3d at 760. Therefore, the Court rejects

9

Defendants' challenge to the award of punitive damages here.

### 5. Whether Wadler Engaged in Protected Activity Under Sarbanes-Oxley

The Sarbanes-Oxley Act prohibits retaliation against an employee who "provide[s] information, cause[s] information to be provided, or otherwise assist[s] in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of 1) section 1341, 1343, 1344, or 1348, 2) any rule or regulation of the Securities and Exchange Commission, or 3) any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). Defendants contend the FCPA is not a "rule or regulation" of the SEC and therefore, that Wadler was required to show that he disclosed information "relating to fraud against shareholders" to prevail on his Sarbanes-Oxley claim. As Defendants already expressly conceded, however, "there is a rule or regulation of the SEC regarding the books and records provisions of the FCPA, and so reporting a books and records violation could support a Sarbanes-Oxley claim. " Dkt. No. 128 at 3. Moreover, the FCPA is an amendment to the Securities and Exchange Act of 1934 and is codified within it. *See* 15 U.S.C. §§ 78dd-1(a) (FCPA's anti-bribery provisions); § 78m (FCPA's books-and-records provisions). Accordingly, the Court rejects Defendants' argument that they are entitled to judgment as a matter of law or a new trial because Wadler's disclosure of alleged FCPA violations (both its anti-bribery provisions and its books-and-records requirements) is not protected activity under the Sarbanes-Oxley Act.

### 6. Whether Wadler Engaged in Protected Activity Under Dodd-Frank

Defendants continue to argue that Plaintiff's claim under the Dodd-Frank Act fails because he did not report the alleged FCPA violations to the SEC. The undersigned has already held in this action that internal whistleblowing is protected under the Dodd-Frank Act and the Ninth Circuit recently reached the same conclusion in *Somers v. Digital Realty, Inc.*, 850 F.3d 1045 (9th Cir. 2017) (holding as a matter of first impression that Dodd-Frank "provide[s] protections to those who report internally as well as to those who report to the SEC."). Accordingly, Defendants are not entitled to judgment as a matter of law or a new trial on this ground.

## IV. CONCLUSION

For the reasons stated above, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated: May 10, 2017

_____
JOSEPH C. SPERO
Chief Magistrate Judge